UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BARRY OPPENHEIM,**

**Plaintiff,**

**vs.** **Case No. 8:09-CV-497-JDW-TGW**

**I.C. SYSTEM, INC.,**

**Defendant.**
_______________________________/

**ORDER**

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 9), to which Plaintiff has responded in opposition (Dkt. 14). Upon consideration, the motion is **GRANTED IN PART** and **DENIED IN PART.**

*Background*

Oppenheim brought this action seeking redress for I.C. System, Inc.'s alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et seq*. Plaintiff further alleges that I.C. System's actions constituted an invasion of his privacy.

Several years ago, Oppenheim established an account with PayPal, a business that facilitates payments and transfers of money via the internet. (Oppenheim Aff. ¶ 4). To provide this service, PayPal typically accepts funds from one party and deposits an equal amount into the account of the other party, less any applicable transaction fees. (Oppenheim Dep. 26-37). Oppenheim agreed that the PayPal User Agreement would govern the provision of PayPal's services. (Oppenheim Aff. ¶ 4). Pursuant to that agreement, PayPal may "reverse" a transaction if the sender was not authorized to make the payment or if the payment was invalidated by the sender's bank. (Dkt. 14-2 ¶¶ 4.5, 15.as).

If PayPal reverses a transaction, the PayPal User Agreement requires the recipient of the transfer to return the funds to PayPal. (Dkt. 14-2 ¶ 4.5).

Barry Oppenheim sold his laptop computer utilizing the internet website CRAIGSLIST. (Oppenheim Aff. ¶ 1; Oppenheim Dep. 29). Oppenheim instructed the buyer to transfer the payment via PayPal. (Oppenheim Aff. ¶ 3). The buyer submitted the payment to PayPal, and PayPal deposited the funds into Oppenheim's account. (Oppenheim Aff. ¶ 5). PayPal represented to Oppenheim that the funds were available for withdrawal. (Oppenheim Aff. ¶ 6). Based on this representation, Oppenheim exchanged the laptop with the buyer. (Oppenheim Dep. 33-35).

After Oppenheim transferred the funds from his PayPal account to his personal bank account, PayPal reversed the payment, indicating that the buyer had fraudulently funded the transaction. (Oppenheim Aff. ¶ 7). Notwithstanding, Oppenheim refused to return the funds to PayPal. (Oppenheim Dep. 43-44). PayPal retained I.C. System to collect the funds. (Oppenheim Dep. 44).

For a period of approximately three months, I.C. System placed numerous calls to Oppenheim's residence in an effort to collect the payment. (Oppenheim Dep. 12). There is no evidence that I.C. System called Oppenheim's place of employment or any number other than his residence and cell phone. (Oppenheim Dep. 11, 45). In some instances, I.C. System called as often as four to six times per day. (Oppenheim Dep. 23). Oppenheim answered approximately ten calls from I.C. System, and his wife answered approximately twenty-five to thirty calls. (Oppenheim Dep. 13). Although no one cursed at him, Oppenheim found the calls belligerent and annoying. (Oppenheim Dep. 18-19). On at least one call, I.C. System threatened to file a lawsuit and stated that his credit would be permanently impacted. (Oppenheim Dep. 19).

Plaintiff commenced this action, alleging that I.C. System "engaged in a pattern of harassment by way of repeated phone calls to Plaintiff in a[n] attempt to collect the . . . alleged debt." (Compl. ¶ 8). Plaintiff contends that Defendant's actions violated the FDCPA and FCCPA and

constituted an invasion of his privacy. Defendant moved for summary judgment, arguing that the funds owed to PayPal were not a "debt" within the meaning of the FDCPA or FCCPA. Additionally, Defendant argues that the facts of this case do not give rise to a claim for invasion of privacy.

*Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.* Once a party properly moves for summary judgment by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). "The court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Id.*

*Analysis*

*1. Fair Debt Collection Practices Act*

Defendant contends that the transaction between Plaintiff and PayPal did not create a "debt" as defined by the FDCPA. Congress enacted the FDCPA to protect consumers from unfair, deceptive, and harassing debt collection practices. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d

1367, 1370 (11th Cir. 1998) (quotation omitted). The existence of a debt is a threshold requirement. *Id.* The FDCPA defines "debt" as

> [A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). According to the plain language of the statute, not every obligation to pay constitutes a debt subject to the FDCPA. *Hawthorne*, 140 F.3d at 1371. The obligation must arise "as a result of a consumer transaction." *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997). That is, the transaction must involve "consumer goods or services." *Mabe v. G.C. Servs. L.P.*, 32 F.3d 86, 88 (4th Cir. 1994).

I.C. System contends that there was no transaction between PayPal and Oppenheim which obligated Oppenheim to pay for any goods or services. However, this overlooks the tripartite nature of the transaction and, particularly, the services which PayPal provided. PayPal acted as a "middleman in the transaction" by accepting funds from the buyer, verifying the existence of the funds, and crediting Plaintiff's account with an equal amount. (Oppenheim Dep. 36-37). Accordingly, PayPal provided a "service" which Plaintiff used for the purpose of facilitating the sale of his laptop computer. *See* 15 U.S.C. § 1692a(5).

The PayPal User Agreement governed PayPal's provision of this service. Pursuant to that agreement, in exchange for providing internet funds transfer services, PayPal was entitled to reverse the transaction if the buyer's payment was invalidated by the bank or was fraudulently made. Consequently, the obligation Plaintiff incurred arose out of the services which PayPal provided pursuant to its contract with Plaintiff. The obligation therefore arose "as a result of a consumer transaction" and is a debt within the meaning of the FDCPA. *See Brown*, 119 F.3d at 923-25 (holding obligation to pay certain fees charged under truck rental agreement as the result of an

accident constituted a debt under the FDCPA).

Relying on *Arnold v. Truemper*, 833 F. Supp. 678 (N.D. Ill. 1993), I.C. System argues that the refusal to return money which one has no legal right to possess does not constitute a debt within the meaning of the statute. *Arnold* involved an obligation which arose from a banking error that improperly credited the plaintiff's account. 833 F. Supp. at 685. The action was dismissed because the plaintiff failed to allege that the debt arose out of any transaction. *Id.*; *see Orenbuch v. Leopold, Gross & Sommers, P.C.*, 586 F. Supp. 2d 105, 108 (E.D.N.Y. 2008) (obligation incurred from salary overpayment arose out of an accounting error, not a consumer transaction). Defendant also relies on cases involving civil theft which, likewise, do not involve consumer transactions. *See, e.g., Shorts v. Palmer*, 155 F.R.D. 172, 176 (S.D. Ohio 1994).

Here, by contrast, Plaintiff's obligation arose out of PayPal's provision of services pursuant to its contract with Oppenheim and PayPal's right to reverse the transaction which had been credited to Plaintiff's account. "[A]s long as the transaction creates an obligation to pay, a debt [under the FDCPA] is created." *Brown*, 119 F.3d at 924 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322 (7th Cir. 1997)). In sum, Plaintiff's obligation to PayPal constitutes a debt under the FDCPA. Defendant is therefore not entitled to summary judgment on Plaintiff's claim for unfair or harassing debt collection practices in violation of the FDCPA.

2. *Florida Consumer Collection Practices Act*

The FCCPA defines "debt" in the same manner as the FDCPA. *See* Fla. Stat. § 559.55(1). The FCCPA provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). Defendant raises no additional arguments for summary judgment on the FCCPA claim. For the same reasons Defendant is not entitled to summary judgment on Plaintiff's FDCPA claim, summary judgment is likewise improper on the FCCPA claim.

### 3. *Common law invasion of privacy*

Defendant contends that the phone calls it made to Plaintiff do not constitute an invasion of privacy by intrusion as they were never published. Without fully developing its argument, Defendant contends that "[s]imply making telephone calls to Plaintiff's residence are not facts that give rise to the tort invasion of privacy." (Dkt. 9, p. 10). Citing an Alabama case, *Sparks v. Phillips & Cohen, Ltd.*, 2008 U.S. Dist. Lexis 47915 (S.D. Ala. June 20, 2008), Defendant seemingly contends that the calls were minor irritations and intrusions, at most, and not sufficiently outrageous to constitute an invasion of privacy.

Florida recognizes three categories of privacy torts: "(1) appropriation-the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion-physically or electronically intruding into one's private quarters; [and] (3) public disclosure of private facts-the dissemination of truthful private information which a reasonable person would find objectionable." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003).[1] Defendant contends that the undisputed facts do not give rise to an invasion of privacy, because there is no evidence of publication to anyone other than Oppenheim and his wife. Oppenheim counters that I.C. System's campaign of telephone calls falls within the second category of privacy torts, intrusion. Unlike the other privacy torts, a claim for intrusion is actionable, notwithstanding the absence of publication. *See id.*; *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989).

Florida law defines intrusion as "physically or electronically intruding into one's private quarters." *Ginsburg*, 863 So. 2d at 162.[2] Even though publication is not required, the focus of the

---

[1] *Ginsberg* listed a fourth category, "false light in the public eye-publication of facts which place a person in a false light even though the facts themselves may not be defamatory." 863 So. 2d at 162. The Florida Supreme Court subsequently held that Florida does not recognize false light as a viable cause of action. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1115 (Fla. 2008).

[2] Plaintiff argues for application of the Restatement (Second) of Torts § 652B (1977), which provides, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a

tort is nonetheless "the right of a private person to be free from public gaze." *Id.* Oppenheim has not cited any Florida cases in which a debt collector was found liable for intrusion based solely on telephone calls to a debtor's residence. Defendant relies on *Sacco v. Eagle Finance Corp. of North Miami Beach,* 234 So. 2d 406, 407-08 (Fla. 3d DCA 1970). *Sacco* is distinguishable and therefore not instructive.[3]

Assuming that a telephone call constitutes a physical or electronic intrusion for purposes of the Florida tort of invasion of privacy, the undisputed facts in this case do not rise to the requisite level of outrageous and unacceptable conduct required by Florida law to support a cause of action for invasion of privacy. To constitute an invasion of privacy, the intrusion must be highly offensive to a reasonable person. *See Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062-63 (Fla. 5th DCA 1991).

"[I]n measuring the unacceptable conduct upon which a claim is made," causes of action for invasion of privacy "share certain similarities" with claims for intentional infliction of emotional distress. *Id.* at 1062 (applying intentional infliction of emotional distress standard to determine

---

reasonable person." In particular, Plaintiff relies on comment d, which states, "[t]hus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. *It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.*" § 652B cmt. d (emphasis added).

Although the Florida Supreme Court has not expressly adopted § 652B, two Florida cases have cited it. In a concurring opinion in one of those cases, Justice Overton defined the tort of intrusion as "physically or electronically intruding into one's private quarters" and cited, among other sources, § 652B. *Forsberg v. Housing Auth. of City of Miami Beach*, 455 So. 2d 373, 376 (Fla. 1984) (Overton, J., concurring). In *Purrelli v. State Farm Fire and Casualty Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997), the court held that an intrusion must be intentional, noting that § 652B defined the tort as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another." However, the Florida Supreme Court in *Ginsberg* defined intrusion as "physically or electronically intruding into one's private quarters," 863 So. 2d at 162, which is significantly narrower than "one who intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." *See* § 652B. Regardless, § 652B has not been adopted in Florida. The *Ginsberg* definition therefore controls.

[3] The plaintiff in *Sacco* brought an invasion of privacy action (among other actions) against the defendant debt collector, based on a series of hostile telephone calls to the plaintiff's residence by the debt collector's agents, the agents' several personal appearances at the plaintiff's residence, and their shouting of an obscenity and "parting words to the effect that he would return the next day to get the money." 234 So. 2d at 407. A directed verdict in favor of the debt collector was reversed, based on a genuine issue of material fact as to whether the debt collector's shouting, "to the Saccos in particular-and the neighborhood in general . . ." was communicated to the public. 234 So. 2d at 408. *Sacco* did not address the intrusive nature of the telephone calls, focusing rather on whether there was a sufficient publication of the shouted insults. *Sacco* is therefore distinguishable from the instant case.

offensiveness of conduct in intrusion claim). "The threshold test to be followed in assessing behavior claimed to constitute the 'intentional infliction of emotional distress,' is whether such behavior is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Id.* (quotation omitted). "[A]n evaluation of the claimed misconduct must be undertaken to determine, as objectively as is possible, whether it is 'atrocious, and utterly intolerable in a civilized community.'" *Id.* (quotation omitted). "That burden falls to the judiciary-it is a matter of law, not a question of fact." *Id.* (quotation omitted); *see also id.* at 1063 (holding trial court properly dismissed complaint which failed to allege conduct sufficiently outrageous to constitute intrusion); *Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (under Florida law, whether conduct is sufficiently outrageous is a "legal question in the first instance for the court to decide as matter of law"); *but see Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 718 (Fla. 3d DCA 1961) (in action for public disclosure of private facts, question of whether remarks published by newspaper would be objectionable to reasonable person was for the jury).

*Stoddard* is instructive. There, as here, the plaintiff relied on a series of telephone calls to support his claim of invasion of privacy. 573 So. 2d at 1061-62. To determine whether the calls rose to the requisite level of unacceptable conduct, the court relied on *Kent v. Harrison*, 467 So. 2d 1114, 1114-15 (Fla. 2d DCA 1985). *Kent* is an intentional infliction of emotional distress case "in which a defendant initiated and for several months continued a campaign of telephonic harassment in the aftermath of a verbal conflict." *Stoddard*, 573 So. 2d at 1062. The conduct in *Kent* was found to be insufficient to support the claim of intentional infliction of emotional distress:

> Thus, we harbor no doubt that the telephone calls received by Kent were offensive and impaired him, his tranquility, and the peacefulness of his home. We are no less persuaded that Harrison's conduct was intentionally designed and undertaken to distress and annoy Kent. In fulfilling the responsibility assigned to us in *Metropolitan* [*Life Insurance Company v. McCarson*, 467 So. 2d 277 (Fla. 1985)], however, we cannot conclude that such behavior was "so outrageous in

> character, and so extreme in degree, as to go beyond all possible bounds of decency." 467 So. 2d at 279. Moreover, Kent's state of vexation, irritation, and agitation cannot be the foundation for a finding that Harrison's behavior is within the range marked out in *Metropolitan* by the standard of "atrocious and utterly intolerable in a civilized community." *Id.*

*Kent*, 467 So. 2d at 1115, *quoted in Stoddard*, 573 So. 2d at 1062-63.

Applying the "threshold test" adopted in *Stoddard,* the determination of whether Defendant's telephone calls to Plaintiff were sufficiently offensive to support Plaintiff's claim of invasion of privacy depends on whether the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." 573 So. 2d at 1062-63. Upon consideration, the Court concludes that it was not. The thirty-five to forty telephone calls to Oppenheim's residence over a period of approximately three months were no more offensive than the "campaign of telephonic harassment" which lasted "for several months" in *Kent*. *See Kent*, 467 So. 2d at 1114.

There is no doubt that I.C. System's calls to Oppenheim were annoying and bothersome. However, those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion. Defendant is therefore entitled to summary judgment on Plaintiff's claim for invasion of privacy.

*Conclusion*

Accordingly, Defendant's motion for summary judgment (Dkt. 9) is **GRANTED** *in part.* Summary judgment is entered in favor of Defendant on Count III of the Complaint. The motion is denied in all other respects.

**DONE AND ORDERED** in chambers this 18th day of February, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record